UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

J S - 6

| Case No. | **EDCV 16-00079 JGB (DTBx)** | Date | March 17, 2016 |
|---|---|---|---|
| Title | *Sheila DeJoya v. UHS of Delaware, Inc. et al.* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff: | Attorney(s) Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings:**   **Order (1) GRANTING Plaintiff Sheila DeJoya's Motion to Remand (Doc. No. 19); and (2) VACATING the March 21, 2016 Hearing (IN CHAMBERS)**

Before the Court is Plaintiff Sheila DeJoya's Motion to Remand ("Motion," Doc. No. 19). The Court finds this matter appropriate for resolution without a hearing. See Local Rule 7-15; Fed. R. Civ. P. 78. After considering the papers filed in support of and in opposition to the Motion, the Court GRANTS the Motion to Remand. The March 21, 2016 hearing is VACATED.

I.   BACKGROUND

On December 11, 2015, Plaintiff filed a putative class action Complaint in the California Superior Court for the County of Riverside against Defendant UHS of Delaware, Inc., an owner of acute care and behavioral hospitals in California. (Doc. No. 1-1.) On December 28, 2015, Plaintiff filed a First Amended Complaint. ("FAC," Doc. No. 1-3.) The FAC asserts seven wage-and-hour claims, including: (1) failure to pay overtime wages; (2) failure to provide meal periods; (3) failure to provide rest periods; (4) failure to pay wages upon ending employment; (5) violations of the California Unfair Competition Law ("UCL"); (6) failure to provide accurate, itemized wage statements; and (7) failure to pay all wages due to illegal rounding. (Id.) Plaintiff and the putative class members are or were non-exempt hourly employees at Defendant's business offices in California. (Id. ¶¶ 1, 10-11.) Plaintiff purports to represent two primary classes of employees: (1) all California hourly employees who were employed from January 14, 2011 to the effective date of Defendant's alternative dispute resolution program ("ARC") ("Pre-

ARC Class"); and (2) current and former California hourly employees of Defendant who opted out of Defendant's ARC program ("Opt-Out Class"). (Id. ¶ 27.)

On January 14, 2016, Defendant filed a Notice of Removal, basing removal jurisdiction on the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). (Not. of Removal, Doc. No. 1.) Defendant calculated that the total amount in controversy for Plaintiff's claims exceeds $5,000,000, for purposes of removal jurisdiction under CAFA. (Id. at 9-17.) In support, Defendant filed the following documents:

- Declaration of Khatereh S. Fahimi (Doc. No. 3);
- Declaration of Brandy Albright ("Albright Decl.," Doc. No. 4); and
- Declaration of Mia Meloni (Doc. No. 5).

On February 16, 2016, Plaintiff filed her Motion to Remand, disputing Defendant's calculation of the amount in controversy in this action. (Doc. No. 19.) In support, Plaintiff filed the following documents:

- Declaration of Janelle Carney and six exhibits ("Carney Decl.," Doc. No. 19-1);
- Request for Judicial Notice of two exhibits ("Pl. Mot. RJN," Doc. No. 19-2); and
- Objections to Declaration of Brandy Albright (Doc. No. 19-3).[1]

On February 29, 2016, Defendant filed an Opposition to the Motion and a supplemental declaration of Brandy Albright ("Albright Supp. Decl."). (Doc. No. 23, 23-1.) On March 7, 2016, Plaintiff filed a Reply to Defendant's Opposition and a supporting Request for Judicial Notice of two exhibits ("Pl. Reply RJN").[2] (Doc. No. 24, 24-1.)

## II. LEGAL STANDARD

Generally, a state court action is only removable to federal court if it might have been brought there originally. 28 U.S.C. § 1441(a). The party seeking removal bears the burden of

---

[1] Because the Court grants Plaintiff's Motion even after considering Albright's declaration, Plaintiff's evidentiary objections to the declaration are OVERRULED as moot.

[2] In both of her requests for judicial notice, Plaintiff requests that the Court take notice of various documents filed in a related wage-and-hour putative class action in this Court against Defendant, titled Rivera v. UHS of Delaware, Inc., No. 5:15-cv-00863-JGB-DTB. Although it is already part of the record, Plaintiff also requests judicial notice of the FAC filed in this action. (See Pl. Reply RJN.) To the extent they request judicial notice of documents filed in Rivera, the Court GRANTS both requests pursuant to Federal Rule of Evidence 201. See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (internal citation omitted).

proving its propriety. Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676, 683–85 (9th Cir. 2006).

Federal courts have original jurisdiction under CAFA where the number of proposed plaintiffs is greater than 100, there is a diversity of citizenship between any member of the class and any defendant, and the amount in controversy is more than $5,000,000, exclusive of interests and costs. 28 U.S.C. § 1332(d); Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1195 (9th Cir. 2015). Though a notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold, when the amount in controversy is contested, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 550 (2014) (analyzing jurisdiction in the context of when a defendant removes an action to federal court under CAFA). Once jurisdiction under CAFA is established by a preponderance of the evidence, it becomes the burden of the party challenging federal subject-matter jurisdiction to establish the applicability of any statutory exception to CAFA jurisdiction. See Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1024 (9th Cir. 2007). "The parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." Ibarra, 775 F.3d at 1197.

A defendant contending the amount in controversy meets the jurisdictional minimum is not obligated to "research, state and prove the plaintiff's claims for damages." Korn v. Polo Ralph Lauren Corp., 536 F. Supp. 2d. 1199, 1204-05 (E.D. Cal. 2003); see also Scherer v. Equitable Life Assurance Society of the United States, 347 F.3d 394, 397–99 (2nd Cir. 2003) (stating that the ultimate or provable amount of damages is not what is considered when determining the amount in controversy; rather, it is the amount put in controversy by the plaintiff's complaint). As long as a defendant's calculations are based on reasonable assumptions arising from a plaintiff's allegations, they are sufficient. See Ellis v. Pac. Bell Tel. Co., 2011 WL 499390, at *2 (C.D. Cal. Feb. 10, 2011) (when proving the amount in controversy, a defendant's calculations must be "good faith, reliable estimates based on the pleadings and other evidence in the record."). "A defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." Ibarra, 775 F.3d at 1197.

### III. DISCUSSION

Plaintiff contends that Defendant has not shown, by a preponderance of the evidence, that there is $5,000,000 in controversy. (Mot. at 3-13.) The Court reviews Defendant's evidence and then addresses the parties' contentions.

#### A. Defendant's Evidence

Defendant argues the aggregate amount in controversy for Plaintiff's claims exceeds $5,000,000. (Not. of Removal ¶¶ 22-27.) In support, Defendant submits a declaration by Brandy Albright, a Human Resources Manager employed by Defendant at its Pacific Region Centralized Business Office ("Pacific Region CBO") in Murrieta, California. (Albright Decl. ¶

1.) Albright avers that on or about November 4, 2013, Defendant introduced an "ARC" arbitration agreement to its employees working at the Pacific Region CBO, under which participating employees "agreed to waive the right to pursue employment-related claims in court" and "agree[d] instead to submit such disputes to binding arbitration." (Id. ¶ 2.) Between January 14, 2011 and November 4, 2013 (i.e. the date of the introduction of the ARC agreement), Defendant employed 159 hourly employees at the Pacific Region CBO. (Id. ¶ 3.) These employees worked a combined total of 24,627 workweeks and their average rate of pay was $18.35 per hour. (Id.)

Based on these figures, Defendant contends that the total amount in controversy for Plaintiff's seven claims is $5,102,883.70. (Not. of Removal ¶ 26.) Specifically, Defendant calculates: (1) $1,355,716.35 in controversy as to each of Plaintiff's overtime, meal period, and rest period claims; (2) $238,879.20 in controversy as to Plaintiff's claim for failure to pay wages upon ending employment; (3) $344,950 in controversy as to Plaintiff's claim for failure to provide accurate, itemized wage statements; and (4) $451,905.45 in controversy as to Plaintiff's claim for illegal rounding. (Id.)

## B. The Parties' Contentions

Plaintiff generally argues Defendant's calculations of the amount in controversy as to her claims for overtime violations, meal and rest period violations, failure to pay wages upon termination, inaccurate wage statements, and illegal rounding are all speculative and based on unsupported assumptions. (Mot. at 3-13.) Defendant's assertion that Plaintiff's overtime claim places $1,355,716.35 in controversy is unsupported by sufficient evidence and cannot be reasonably inferred from the evidence or the allegations in the FAC. Because only a lower amount can be reasonably inferred as to the overtime claim, the aggregate amount – even if Defendant's estimate as to Plaintiff's other claims are accepted as correct – does not meet the requisite $5,000,000 in controversy.

Defendant calculates the amount in controversy for Plaintiff's overtime claim by multiplying the total number of workweeks for the 159 employees employed by Defendant at the Pacific Region CBO between January 14, 2011 and November 4, 2013 (i.e. 24,627 workweeks) by the average rate of the employees' pay (i.e. $18.35). (Not. of Removal ¶ 26a.) Defendant then multiplies this figure by 1.5 (the time and a half overtime premium).[3] (Id.) Defendant assumes each employee performed two hours of unpaid overtime work per week and, thus, multiplies the resulting figure by 2. This leads to a total of $1,355,716.35. (Id.)

---

[3] Under California Labor Code section 510, an employee is entitled to overtime at the rate of no less than one-and-one-half times his or her regular rate of pay if the employee works in excess of eight hours per day or forty hours per week. Cal. Labor Code § 510. Defendant's calculation multiplies the employees' average rate of pay ($18.35) by 1.5 and then multiplies this figure by 2 – this leads to the amount an employee would receive for working two hours of overtime a week.

Plaintiff argues Defendant's calculation is based on a number of unsupported assumptions. In particular, Plaintiff contends Defendant unreasonably assumes that all 159 employees performed two hours of unpaid overtime work for each of the 24,627 workweeks described in Albright's declaration. (Mot. at 15.) Plaintiff argues Defendant presents no evidence indicating these employees all regularly performed two hours of overtime work per workweek. (Id.)

Defendant responds that its calculation relies on broad allegations in the FAC as to the extent of the supposed overtime violations; for example, the FAC alleges that "Defendant consistently administered a corporate policy . . . which required the entirety of all classes to work overtime without proper premium pay due to Defendant's uniform practice and policy . . . [t]hus, Plaintiff and all others similarly situated routinely, regularly, and customarily performed overtime work. (Opp. at 10-11 (citing FAC ¶ 37); see also FAC ¶¶ 36, 38 (similar allegations).) Defendant argues such allegations support its assumption that the 159 employees discussed in Albright's declaration performed at least two hours of unpaid overtime work per week. (Opp. at 10-11.)

**C.    Analysis**

The Court concludes Defendant's calculation of the amount in controversy as to Plaintiff's overtime claim is speculative and not based on reasonable inferences from the FAC. Neither Albright's declaration nor the FAC's allegations support the assumption that each of the 159 employees who worked at the Pacific Region CBO between January 14, 2011 and November 4, 2013 performed two hours of unpaid overtime work during each workweek. At best, the FAC's allegations regarding the pervasiveness of the overtime violations would suggest Defendant's employees performed <u>one</u> hour of unpaid overtime work per workweek.[4] In short,

---

[4] When assessing a motion to remand recently filed in a related wage-and-hour putative class action against Defendant, titled <u>Rivera v. UHS of Delaware, Inc.</u>, No. 5:15-cv-00863-JGB-DTB, this Court found reasonable Defendant's estimate that its employees performed <u>one</u> hour of unpaid overtime work per workweek. (Carney Decl., Ex. 2 at 5.) In <u>Rivera</u>, plaintiff Vanessa Rivera asserted a number of wage-and-hour claims against Defendant in state court, on behalf of non-exempt hourly employees of Defendant who were not involved in patient care at hospitals owned by Defendant. (See Pl. Reply RJN, Ex. 3.) As here, Rivera claimed Defendant had failed to pay its employees overtime wages. (Id.) Defendant removed the action to this Court. (See Carney Decl., Ex. 2.) In response to a motion to remand filed by Rivera, Defendant contended this Court had jurisdiction under CAFA because the action had an amount in controversy exceeding $5,000,000. (See id., Ex. 1.) In support, Defendant calculated the amount in controversy as to each of Rivera's claims. (Id., Ex. 1.) Defendant's calculation as to Rivera's overtime claim was based on an estimate that a number of its employees performed one hour of overtime per week. (Id. at 16-18.) The Court found Defendant's estimate to be reasonable based on allegations in Rivera's operative complaint that Defendant's overtime violations were "routine[]," "regular[]," and applicable to the entire putative class. (Carney Decl., Ex. 2 at 5.) Finding Defendant's calculations were proper, the Court denied Rivera's motion to remand. (Id. at 7.)

Defendant's calculation of the amount in controversy as to Plaintiff's overtime claim is based on the unsupported assumption that its employees performed two hours of unpaid overtime work per workweek.  See Ibarra, 775 F.3d at 1197.

      Accordingly, Defendant has failed to establish by a preponderance of the evidence that the total amount in controversy in this action exceeds $5,000,000.  Defendant's calculations of the amount in controversy as to Plaintiff's other claims total only $3,747,167.35.  (See Not. of Removal ¶ 26.)  Even assuming Defendant's 159 employees at the Pacific Region CBO worked one hour of overtime per workweek (as the FAC's allegations would suggest), the amount in controversy as to Plaintiff's overtime claim would be $677,858.18, and the aggregate amount in controversy would be only $4,425,025.53 – well below the minimum amount required for jurisdiction under CAFA.[5]  (Id.)  Hence, the Court lacks jurisdiction over this action under CAFA.

---

      Rivera is distinguishable from this action.  Admittedly, the FAC's allegations regarding Defendant's overtime violations are identical to those in Rivera's operative complaint.  (Compare FAC ¶ 37 with Pl. Reply RJN, Ex. 3, ¶ 35.)  In Rivera, the Court found such allegations gave rise to a reasonable inference that Defendant's employees performed at least one hour of unpaid overtime work per workweek.  (Carney Decl., Ex. 2 at 5.)  Nonetheless, Defendant offers no evidentiary support for its assumption here that the 159 individuals it employed at the Pacific Region CBO between January 14, 2011 and November 4, 2013 performed two hours of unpaid overtime work.

[5]    Defendant briefly notes that it "did not include liquidated damages under [California] Labor Code section 1194.2 [in its calculations], which would have doubled the amount in controversy as to Plaintiff's rounding claim, adding an additional $451,905.45 to the amount in controversy."  (Opp. at 20.)  Moreover, Defendant claims it could have added an additional $1,807,621.80 to the total amount in controversy by assuming Defendant committed more meal and rest break violations.  (Id.)  Defendant, however, does not include either of these figures in its official estimate of the total amount in controversy and appears to cite these figures solely to argue that its official estimate is "conservative."  (Id.)

      Defendant also argues Plaintiff's request for attorney's fees through trial would increase the total amount in controversy.  (Opp. at 17-18.)  "[C]ourts are split as to whether only attorneys' fees that have accrued at the time of removal should be considered in calculating the amount in controversy, or whether the calculation should take into account fees likely to accrue over the life of the case."  Hernandez v. Towne Park, Ltd., No. CV 12-02972-MMM (JCGx), 2012 WL 2373372, at *19 (C.D. Cal. June 22, 2012) (collecting cases); see Reames v. AB Car Rental Servs., Inc., 899 F. Supp. 2d 1012, 1018 (D. Or. 2012) ("The Ninth Circuit has not yet expressed any opinion as to whether expected or projected future attorney fees may properly be considered 'in controversy' at the time of removal for purposes of the diversity-jurisdiction statute, and the decisions of the district courts are split on the issue.").  The Court is persuaded that "the better view is that attorneys' fees incurred after the date of removal are not properly included because the amount in controversy is to be determined as of the date of removal."  Dukes v. Twin City Fire Ins. Co., No. CV 09-2197-PHX–NVW, 2010 WL 94109, at *2 (D. Ariz. Jan. 6, 2010) (internal citation omitted).  Indeed, "[f]uture attorneys' fees are entirely

Accordingly, the Court GRANTS Plaintiff's Motion to Remand.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion to Remand (Doc. No. 19).  This action is REMANDED to the California Superior Court for the County of Riverside.

The March 21, 2016 hearing is VACATED.

**IT IS SO ORDERED.**

---

speculative, may be avoided, and are therefore not 'in controversy' at the time of removal." Id. Here, Defendant provides no evidence of the amount of attorney's fees that were incurred at the time of removal.